IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KENNETH WAYNE CROSS, JR.,                                        PLAINTIFF

v.                              Civil No. 4:24-CV-04117-SGS

STATE TROOPER JOHNATHAN NUTT,                                    DEFENDANT

## MEMORANDUM AND ORDER

Plaintiff Kenneth Wayne Cross, Jr.,[1] has commenced the above-captioned civil rights matter under 42 U.S.C. § 1983 generally alleging that Defendant Arkansas State Trooper Johnathan Nutt violated his constitutional rights during the July 18, 2024, stop and search of his vehicle and person.  (ECF No. 1).  Plaintiff proceeds pro se and *in forma pauperis* ("IFP").  (ECF No. 3).  All parties have consented to the jurisdiction of the magistrate judge to conduct all proceedings and for the entry of judgment in this case.  (ECF No. 15).

This matter is currently before the Court on Defendant Nutt's Motion for Summary Judgment, (ECF No. 23), and Plaintiff's Motion for Judgment, (ECF No. 61), Motion for Order, (ECF No. 64), and Motion for Court to Order Arbitration, (ECF No. 65).  Plaintiff has filed a response in opposition to Defendant Nutt's Motion for Summary Judgment.  (ECF No. 44).  Defendant Nutt has filed a reply, (ECF No. 46), and Plaintiff has filed a supplement to his response, (ECF No. 62).  No further input on Defendant's Motion for Summary Judgment is necessary.  This motion is therefore ripe for the Court's consideration.  Defendant Nutt has not responded to

---

[1] Plaintiff was a pretrial detainee at the Miller County Detention Center ("MCDC"), which is located in the Western District of Arkansas, when he initiated this action.  Court records reflect that he has been in and out of custody during the pendency of these proceedings.  His most recent notice of change of address reflects that he is currently in the custody of the MCDC.  (ECF No. 55).

Plaintiff's Motion for Judgment, Motion for Order, or Motion for Court to Order Arbitration, and none is warranted. These motions are therefore also ripe.

Upon review, and for the reasons described below, Defendant Nutt's Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Judgment, (ECF No. 61), Motion for Order, (ECF No. 64), and Motion for Court to Order Arbitration, (ECF No. 65), are therefore **DENIED** as **MOOT**.

**BACKGROUND[2]**

Plaintiff's Complaint alleges that on July 18, 2024, at approximately 10:30 p.m., Defendant Nutt pulled him over for a malfunctioning taillight, directed him to step out of the vehicle, and searched his vehicle without his consent. (Compl. at 3 (ECF No. 1)). According to Plaintiff, when Defendant Nutt did not recover any contraband during this search, he moved Plaintiff out of the view of the squad camera and then searched his person. *Id.* During this search, Plaintiff says that Defendant Nutt placed his hands into his pants and underwear, touching his buttocks, penis, and testicles. *Id.* Because Defendant Nutt's conduct made him feel uncomfortable, he told Defendant Nutt to search him on camera. Defendant Nutt complied and then proceeded to conduct a "pat down" search of Plaintiff's person. Finding nothing, Defendant Nutt then conducted a second search of his vehicle and came back saying that he recovered contraband. *Id.* at 4. Plaintiff contends that Defendant Nutt sexually assaulted him, and that Defendant Nutt's conduct violated Plaintiff's due process rights and rights under the Fourth and Fifth Amendments. *Id.* at 9. He says that the Defendant Nutt's conduct reminded him of when he was sexually assaulted in prison and caused him to experience homicidal and suicidal thinking, leading him to attempt suicide. *Id.* at

[2] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of Defendant Nutt's Motion for Summary Judgment.

5-6. Plaintiff identifies Defendant Nutt in his personal and official capacities. *Id.* at 8. He requests compensatory and punitive damages. *Id.* at 10.

Ultimately, Defendant Nutt filed an Answer, denying the allegations against him. (ECF No. 13). The parties conducted discovery on Plaintiff's claims and Defendant Nutt has now filed the motion for summary judgment presently before the court, arguing that Defendant Nutt did not violate Plaintiff's constitutional rights and that sovereign immunity bars Plaintiff's official capacity claims. (ECF No. 23). Defendant Nutt submitted a memorandum, statement of undisputed material facts, and five exhibits, including Defendant Nutt's dash cam and rear cam video, in support. (ECF No. 24-25). Upon filing, this Court ordered Plaintiff to submit a response by July 28, 2025, and provided instructions on how to respond. (ECF No. 26).

Instead of filing a response, Plaintiff submitted a motion for a subpoena to obtain his own medical records. (ECF No. 28). Defendant Nutt filed his objection to the subpoena request. (ECF No. 30). Plaintiff then filed a Motion to Appoint Counsel. (ECF No. 32). Upon review, United States Magistrate Judge Barry Bryant, now retired, denied both the request for counsel on the grounds that Plaintiff was adequately prosecuting his lawsuit at the time, (ECF No. 33), and Plaintiff's request for a subpoena because it was untimely, (ECF No. 34). Plaintiff then filed a second motion for a subpoena and a second motion for appointment of counsel. (ECF No. 35 & 36). Judge Bryant denied the second request for counsel on the grounds that it did not provide any new information that was not previously considered in Plaintiff's first request for counsel. (ECF No. 37).

Plaintiff's second request for a subpoena requested stop light camera footage, gas station camera footage, Defendant Nutt's body camera and squad car footage, and Defendant Nutt's "GPS and Dispatch Call" report. (ECF No. 36). Upon review, the Court denied Plaintiff's request for a

subpoena for third-party records, namely the Valero gas station surveillance video, and ordered Defendant Nutt to file a notice detailing the status of his disclosure of Plaintiff's remaining discovery requests. (ECF No. 42). The Court also stayed the deadline for Plaintiff to respond to Defendant Nutt's Motion for Summary Judgment pending further order of the Court. *Id.*

Notwithstanding the Court's stay, Plaintiff filed a response in opposition to Defendant Nutt's Motion for Summary Judgment, contending that the searches of his person and vehicle were unreasonable under the Fourth Amendment and describing the dashcam video as evidence in support. *See* (Resp. at 6 (ECF No. 44)). Defendant Nutt then filed the required notice on the status of his disclosures, explaining that, by information and belief, he disclosed copies of his rear-facing and front-facing squad video from the incident, along with the WGVPlayer (WatchGuard) to play the video in its native format, on March 17, 2025, to Plaintiff's address of record at the time. (ECF No. 45). Defendant Nutt also explained that there is no bodycam video of the incident because Arkansas State Troopers do not wear body cameras, Defendant Nutt did not obtain any traffic footage regarding the July 18, 2024, traffic stop, and the Arkansas State Police does not have custody and control over traffic camera footage. *Id.* Defendant Nutt further explained that his GPS data appears on his squad video footage when it is viewed on the WatchGuard video player, its native format. *Id.* Finally, Defendant Nutt included a copy of the dispatch log related to the July 18, 2024, traffic stop as Exhibit 2, explaining that it was not produced with the initial disclosures because it does not document the incident giving rise to Plaintiff's claims. *Id.* Defendant Nutt also filed a reply to Plaintiff's response. (ECF No. 46).

Plaintiff then filed a Motion for Settlement Conference, (ECF No. 49), and a Motion to File Criminal Charges, (ECF No. 50), neither of which addressed Defendant Nutt's notice regarding the status of his disclosure obligations. Magistrate Judge Bryant denied both motions.

(ECF No. 51).  Over two months later, Plaintiff filed a Motion for Judgment, asking for final judgment to be entered in this case, (ECF No. 61), a Motion for an Order denying summary judgment, (ECF No. 64), and a Motion directing the Court to order arbitration, (ECF No. 65). Plaintiff also submitted a supplement to his response in opposition to Defendant Nutt's Motion for Summary Judgment, asserting that corroborating video evidence, specifically body cam video, was not produced during discovery, and asking for summary judgment to be denied.  (ECF No. 62). The Court turns now to the merits of that motion.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party."  *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is material only when its resolution would affect the outcome of a case.  *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).  In response, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."  *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.

# FACTS

The parties agree that Defendant Nutt stopped the vehicle Plaintiff was driving, a white Ford Fusion, on July 18, 2024, at approximately 10:30 p.m., in White Hall, Arkansas.[3]  (ECF No. 24-1 at 5); (ECF No. 44).  Aside from this singular point of agreement, the parties' accounts of what happened during that traffic stop differ.

## A.    Plaintiff's Version

As the nonmoving party, the Court starts with Plaintiff's version of events.[4]  *See Ward*, 939 F.Supp.2d at 961 (explaining that on summary judgment the court "views all evidence and inferences in a light most favorable to the nonmoving party").  Plaintiff says that he first noticed Defendant Nutt's squad car facing eastbound on Highway 270 because its emergency lights were activated.  At the time, Plaintiff says that he was traveling westbound on Highway 270 near the I-530 exit after stopping for gas at the Valero Truck Stop.  (ECF No. 44 at 2).  Plaintiff describes this area as a "well known police (sting area)."  *Id.*  After seeing Defendant Nutt's squad car, he proceeded to travel "rapidly" on I-530 to distance himself from Defendant Nutt because he knew his tags were out of date.  Despite these efforts, Defendant Nutt traveled at a high rate of speed to

---

[3]  The Court takes judicial notice that White Hall, Arkansas is located in Jefferson County, Arkansas and that Jefferson County is part of the Eastern District of Arkansas.  *See* 28 U.S.C. § 83(a)(1).  Plaintiff elected to file his lawsuit in the Western District of Arkansas, and the Defendant did not (and has not) challenged venue at any point during these proceedings.  Accordingly, the Court finds that all potential venue objections have been waived.  *See* Fed. R. Civ. P. 12(h)(1); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); *Upchurch v. Piper Aircraft Corp.*, 736 F.2d 439, 440 (8th Cir. 1984) (concluding that any objection to venue was waived when it was not raised in the answer to the complaint).

[4]  The facts outlined in this section derive from Plaintiff's response, which is sworn under penalty of perjury, *see* (ECF No. 44), and his verified complaint, (ECF No. 1).  *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 682 (8th Cir. 2012) ("[A] verified complaint is equivalent to an affidavit for summary judgment purposes[.]").  The Court considers Plaintiff's unsworn supplement, *see* (ECF No. 62), by contrast, as argument, not evidence.

catch up to him. *Id.* While Defendant Nutt was catching up to Plaintiff, Plaintiff was on the phone with his spouse, telling her what was happening as he was traveling to pick her up for lunch. *Id.* He says his rear taillight was working properly at the time. *Id.* at 3.

After initiating a traffic stop, Plaintiff says that Defendant Nutt did not ask him for his driver's license and insurance. *See* Compl. at 3 (ECF No. 1). Defendant Nutt then restrained Plaintiff and searched his car without his consent, finding nothing. *Id.* After concluding the search, Defendant Nutt moved Plaintiff out of view of the dashcam and searched his person. *Id.* During this search, Plaintiff says that Defendant Nutt put his hand inside his underwear and sexually assaulted him by touching his buttocks, penis, and testicles. *Id.* In response, Plaintiff said, "You are illegally searching me! Take me to the front of the car." Resp. at 5 (ECF No. 44). When Defendant Nutt moved him back to the front of the squad car, he conducted a light pat search of Plaintiff's pockets. *Id.* at 6. Plaintiff contends that the initial stop of his vehicle was racially motivated, that Defendant Nutt found crushed vitamin supplements in the vehicle, and that Defendant Nutt placed the methamphetamine in his vehicle because he knew that his search of Plaintiff was improper. *Id.* at 7-8.

## B.    Defendant Nutt's Version

Defendant Nutt contends that he first observed Plaintiff's vehicle in front of him when he was traveling northbound on I-530. Aff. at ¶ 2 (ECF No. 24-1). According to Defendant Nutt, he initiated the traffic stop because one reverse taillight on Plaintiff's vehicle was illuminated. *Id.* Defendant Nutt's police report notes that when the vehicle stopped, he also observed that the vehicle's temporary license plate had expired on July 8, 2024. Pol. Rep. at 5 (ECF No. 24-1). After the stop, Defendant Nutt approached the front passenger side of the vehicle, introduced himself, and provided the reason for the stop. *Id.* Plaintiff was not able to produce his driver's

license upon request.  *Id.*  While Defendant Nutt was talking to Plaintiff, he observed a small, clear plastic bag in the center console underneath the vehicle's radio.  *Id.*  The bag contained a crystalline substance, which Defendant Nutt believed to be 3.5-5 grams of methamphetamine.  *Id.*  Defendant Nutt ordered Plaintiff out of the vehicle after he observed Plaintiff attempting to conceal the bag with his hand.  *Id.*

When Plaintiff exited the vehicle, Defendant Nutt placed him in handcuffs and searched his person.  *Id.*  He then searched the vehicle and observed a crystalline substance scattered around the front driver's seat and the center console.  *Id.*  When Defendant Nutt asked Plaintiff about what had happened to the bag, Plaintiff admitted to destroying it and claimed that the bag contained crushed vitamin supplements.  *Id.*  Defendant Nutt also located the vitamin supplements, but they consisted of a crushed powder, not a crystalline substance.  *Id.*  Defendant Nutt recovered a sample of the suspected contraband and then learned that the detention center would not detain Plaintiff.  Defendant Nutt therefore issued Plaintiff citations for: (1) possession of a controlled substance, meth/cocaine, 2g to 10g, in violation of Ark. Code Ann. § 5-64-419, a class "C" felony; (2) tampering with physical evidence in violation of Ark. Code Ann. § 5-53-111, a class "D" felony; (3) failure to transfer vehicle registration in violation of Ark. Code Ann. § 27-14-903; and (4) defective reverse lamps in violation of Ark. Stat. Ann. § 27-36-217.  *Id.*  He then released Plaintiff from the stop.  *Id.*  A field test on the suspected contraband later came back as a presumptive positive for methamphetamine.  *Id.*

Defendant Nutt says that the searches of Plaintiff's person and vehicle complied with Arkansas State Police policy and training.  Aff. at ¶ 5 (ECF No. 24-1).  He also says that he did not place his hands "inside Plaintiff's shorts or in his under garments" at any time during the search of Plaintiff's person.  *Id.* at ¶ 4.

8

C.     **Dashcam Video**[5]

Defendant Nutt's dashcam video starts when both vehicles are on I-530.  *See* Ex. 2 (ECF No. 24-3).  As the squad car closes the distance to the Ford Fusion from behind, it appears that the sedan's two rear taillights are not similarly illuminated.  *Id.* at 0:30-1:00.  Defendant Nutt activates his emergency lights, initiating a traffic stop, and the Ford Fusion pulls over to the side of the highway.  *Id.* at 1:00.  Defendant Nutt approaches the front passenger side of the vehicle and explains to Plaintiff, the sole occupant, that he pulled him over because his reverse light is on "all the time." *Id.* 2:25-3:00.  Defendant Nutt requests Plaintiff's driver's license.  *Id.*  When Plaintiff is not able to produce it, Defendant Nutt asks him to write his name and birthdate on a piece of paper.  *Id.*  During this encounter, Defendant Nutt's flashlight is in his left hand or under his left armpit, pointed towards Plaintiff and the vehicle's front passenger compartment.  *Id.*  After Plaintiff writes down the requested information, Defendant Nutt takes the paper and directs Plaintiff to turn off the engine and to step out of the car.  *Id.* at 4:00-5:00.  After three verbal requests to exit the vehicle, Plaintiff eventually complies and walks to the back of the sedan, as directed.  *Id.* at 4:30.  Defendant Nutt puts him in handcuffs, tells him to drop his keys, and checks Plaintiff's pockets and socks.  *Id.* at 5:00.  At this point, Defendant Nutt starts asking Plaintiff what he did with "it," telling him that he was trying to conceal meth in the center console.  *Id.* at 5:00-6:30.  Plaintiff responds telling him there was no meth in the center console, only pills.  *Id.*

---

[5]  Plaintiff argues that body cam video is "missing." (ECF No. 62).  Defendant Nutt, through counsel, filed notice saying that no body cam video exists because Arkansas State Police do not wear body-worn cameras.  (ECF No. 45).  Indeed, Defendant Nutt's dashcam video shows that he is not wearing a body-worn camera during the traffic stop.  *See* Ex. 2 (ECF No.24-3).  For his part, Plaintiff asserts no facts suggesting that body-worn camera footage exists notwithstanding the absence of a body worn camera on the dashcam video and the representations of counsel.  Accordingly, Plaintiff's claim that bodycam video is "missing" is simply not persuasive.

After directing Plaintiff to sit on the squad car's front bumper, Defendant Nutt picks up Plaintiff's keys, places them on the trunk of the sedan, and then searches the front passenger compartment. *Id.* at 6:30-7:30. While the extent and scope of the search are not visible from the dashcam video, Defendant Nutt eventually pulls out what appears to be a prescription pill bottle, places it on the roof of the sedan and asks Plaintiff about it. *Id.* at 7:30-8:00. There is some discussion about whether Defendant Nutt saw crushed pills from the pill bottle. *Id.* Defendant Nutt then starts searching the front driver's side compartment. Again, the scope of this search is not visible on the dashcam video. During this search, Defendant Nutt says, "You dumped it, why?" *Id.* at 8:00-8:30. After continuing to search for another 90 seconds, Defendant Nutt approaches Plaintiff and asks about he found on the driver's seat. *Id.* at 9:30-10:00. Plaintiff explains that Defendant Nutt saw crushed up pills from the pill bottle, but Defendant Nutt pushes back, saying that he saw "crystal," not pills. *Id.* at 10:00. Plaintiff said it was pills and that he "ate the bag." *Id.* at 10:30. Defendant Nutt tells Plaintiff that there is "crystal all over the seat," directs Plaintiff to open his mouth, and looks inside Plaintiff's mouth with a flashlight. Plaintiff said he "ate the bag." Evidently finding nothing, Defendant Nutt goes back to the sedan, looks at the pill bottle, empties its contents, looks through the front passenger side compartment again, and then returns to his squad car.

At minute 13:30, Plaintiff asks to speak with his fiancée, explaining that he has been harassed before about the rear taillight on the car. Defendant Nutt tells him that his tags are expired, so no one is harassing him about the car. *Id.* at 14:00. The dashcam shows that temporary plates on the sedan expired on July 8, 2024, ten days before the traffic stop. Plaintiff and Defendant Nutt proceed to argue about the substance Defendant Nutt says he found on the driver's side seat. At minute 14:40, Plaintiff stands up and tosses a small baggie containing a white substance into

the grass by the side of the road. *Id.* at 14:40-14:50.  Approximately two minutes later, Plaintiff

asks to see what Defendant Nutt recovered from the front driver's seat, Defendant Nutt refuses the

request.  *Id.* at 15:30.   At minute 18:30, Plaintiff and Defendant Nutt discuss the crushed pills,

Plaintiff tells him that he tried to "pass it off as something else." *Id.*  Defendant Nutt tells Plaintiff

that he is going to place him in the back of the squad car, and begins leading Plaintiff, who remains

in handcuffs, in that direction, outside the view of the dashcam.  *Id.* at 19:30.

At minute 19:30, Defendant Nutt tells Plaintiff (outside the view of the dashcam) that he

is under arrest and declines his request to make a phone call.  *Id.*  The dashcam then picks up the

following exchange:

| | |
|---|---|
| Defendant Nutt: | You got it in your ass crack, 'bro? |
| Plaintiff: | I don't have shit in my ass crack, man. I don't got shit. I gotta pull my pants down now. |
| Defendant Nutt: | No, you don't. |

*Id.* at 19:30-20:00

| | |
|---|---|
| Plaintiff: | Man, c'on man |
| Defendant Nutt: | Man, c'on man…Is it in your ass crack bro? |
| Plaintiff: | Ain't nothing in my ass crack |

[inaudible]

| | |
|---|---|
| Plaintiff: | Is that why you don't got me in front of the camera. |
| Defendant Nutt: | No. |
| Plaintiff: | …Then put me in front of the camera |
| Defendant Nutt: | I can hear something in there…I can hear plastic |
| Plaintiff: | I have nothing. |

*Id.* at 20:00-21:00.

Defendant Nutt moves Plaintiff back to the front of the squad car. Plaintiff offers to take his pants off to show Defendant Nutt that he does not have anything in his "ass crack," Defendant Nutt declines the request and places him in the back of the squad car. *Id.* at 21:00-22:00.

Defendant Nutt, now wearing blue gloves, then returns to the front passenger side and leans into Plaintiff's vehicle. *Id.* at 24:00—27:00. He then opens the rear driver's side door and briefly looks inside, before closing the door, and opening the front driver's side door and looking into the vehicle. *Id.* at 27:00-28:30. At minute 28:30, he returns to the squad car and tells Plaintiff that he is "sorry about his luck." *Id.* After a short, muffled conversation, Defendant Nutt returns to the front passenger side of Plaintiff's vehicle with what appears to be an evidence bag, goes inside the car and puts something in the bag. *Id.* at 29:00-31:00. Defendant Nutt walks back to the squad car with the bag, saying, "That's all I need." *Id.* at 31:00. Defendant Nutt tells Plaintiff that he is going to be charging him with felony tampering. *Id.* Plaintiff disputes the charge, telling him that he did not tamper with any evidence, explaining that the suspected contraband could have come from the mechanic who had been working on his car. *Id.* at 32:00.

For the next eight minutes, Plaintiff sits in the back of Defendant Nutt's squad car. At minute 37:00, Defendant Nutt learns that the detention center will not detain Plaintiff, and Defendant Nutt tells him that "it's [his] lucky day and [he] can go home with felonies." Approximately three minutes later, Defendant Nutt exits the squad car, opens Plaintiff's trunk, looks inside, moves things around, and then shuts the trunk. *Id.* at 40:00. He then takes Plaintiff out of the back of the squad car, brings him to the front of the squad car, removes the handcuffs, and gives Plaintiff his tickets. *Id.* at 41:00-42:00. Plaintiff takes the tickets, gets inside his car,

and drives away. *Id.* at 42:20-42:30. As Plaintiff merges onto the highway, his right rear taillight appears more illuminated than the left rear taillight. *Id.*

## ANALYSIS

Plaintiff asserts that during the July 18, 2024 traffic stop, Defendant Nutt violated his Fourth and Fifth Amendment rights in violation of 42 U.S.C. § 1983. To establish a § 1983 claim, a plaintiff must show: "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Further, "[p]ublic servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

Plaintiff sues Defendant Nutt in his official and individual capacities. (ECF No. 1). He requests compensatory and punitive damages and asks that Defendant Nutt be "held accountable for his misconduct." Compl. at 10 (ECF No. 1). Defendant Nutt asserts that sovereign immunity bars Plaintiff's official capacity claims and that he is entitled to qualified immunity with respect to the individual capacity claims because the undisputed material facts establish that Defendant Nutt did not violate Plaintiff's constitutional rights. This Court agrees.

## I. Official Capacity Claims

Turning first to Plaintiff's official capacity claims, "[s]uits against state officials in their official capacity [] should be treated as suits against the State." *Hafer*, 502 U.S. at 25. As such, a

claim against Defendant Nutt, an Arkansas State Trooper, in his official capacity is no different than a claim against the State of Arkansas. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). With respect to this claim, Plaintiff asserts two requests for relief: (1) money damages and (2) that Defendant Nutt be "held accountable" for his misconduct. *See* Compl. at 10 (ECF No. 1).

It is well-settled, however, that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir. 1991) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). While there are two narrow exceptions to sovereign immunity, neither applies here: "[a] state may waive its sovereign immunity and consent to suit in federal court, and Congress may, by legislation, abrogate immunity without the state's consent in order to effectuate the provisions of the Fourteenth Amendment." *Id.* But Congress did not abrogate sovereign immunity when enacting § 1983, and the State of Arkansas has not consented to be sued under § 1983. *Id.* Further, "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983" when sued for money damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, sovereign immunity bars Plaintiff's official capacity claim against Defendant Nutt for money damages.

This leaves his request for Defendant Nutt to be "held accountable for past misconduct." Sovereign immunity does *not* bar suits against state officials in their official capacity for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 157-60 (1908); *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995) ("*Ex parte Young* recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law."). But Plaintiff's request

that Defendant Nutt be held accountable for his past misconduct is backwards looking, seeking to correct a past harm, not an ongoing or future harm. *See Guggenberger v. Minnesota*, 198 F.Supp.3d 973, 999 (D. Minn. 2016) ("[T]o determine whether *Ex parte Young* applies to override Eleventh Amendment sovereign immunity, the Court must focus not on the impact of the requested relief on the state treasury, but on whether the relief sought is fundamentally prospective or retrospective in nature."). Accordingly, the relief Plaintiff seeks is retrospective in nature, not prospective, and Defendant Nutt is entitled to sovereign immunity in his official capacity with respect to this request for relief as well.

In sum, this Court agrees that sovereign immunity bars Plaintiff's claims against Defendant Nutt in his official capacity. Defendant Nutt is therefore entitled to summary judgment with respect to Plaintiff's official capacity claims.

## II.     Individual Capacity Claims

With respect to Plaintiff's individual capacity claims, Defendant Nutt claims he is entitled to qualified immunity. *See* (ECF No. 23). The court's qualified immunity analysis considers two questions: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional . . . right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The court may consider these questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But a plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Id.* In this case, Plaintiff asserts violations of his Fourth and Fifth Amendment rights in the stop and search of his car, and the search of his person. The Court addresses each in chronological order.

A.    **The traffic stop**

"The Fourth Amendment protects against 'unreasonable searches and seizures,' and a traffic stop constitutes a seizure of the vehicle's occupants." *Saunders v. Thies*, 38 F.4th 701, 710 (8th Cir. 2022) (quoting *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir.), *cert. denied*, __ U.S. __, 141 S. Ct. 930, 208 L.Ed.2d 472 (2020).   To comply with the Fourth Amendment, "a traffic stop must be justified by 'reasonable suspicion . . . that criminal activity may be afoot.'" *Id.* "Reasonable suspicion requires 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 710-11 (quoting *United States v. Shumaker*, 21 F.4th 1007, 1017 (8th Cir. 2021)).

The parties dispute the basis of the stop: Defendant Nutt contends that he stopped Plaintiff's vehicle because the rear taillight was improperly illuminated.  Aff. at ¶ 2 (ECF No. 24-1).  Plaintiff, by contrast, asserts that his rear taillight was working properly at the time and that the traffic stop was motivated by race.  *See* (ECF No. 44).  For the purposes of summary judgment, however, this fact dispute is not material.

The Eighth Circuit has noted that "any traffic violation, no matter how minor, is sufficient to provide an officer with probable cause" to stop a motor vehicle.  *United States v. Foster*, 15 F.4th 874, 877 (8th Cir. 2021).  "But, the officer must have 'a reasonable basis for believing that the driver has breached a traffic law.'" *Id.* (quoting *United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013)).  "An officer's mistake of law or fact may justify a stop so long as that mistake is objectively reasonable." *Id.* (citing *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021)).

Arkansas state law provides that no backup lamp light on a motor vehicle shall be "lighted when the motor vehicle is in forward motion."   Ark. Code Ann. § 27-36-217(c)(2) (2024).  Arkansas law, moreover, permits police officers who have "reasonable cause to believe that a

motor vehicle is unsafe or not equipped as required by law or that the motor vehicle equipment is not in proper adjustment or repair" to "stop and submit the vehicle to an inspection and test as may be appropriate." Ark. Code Ann. § 27-32-101(b).

Here, Defendant Nutt says that he believed that Plaintiff's vehicle's rear taillight was improperly illuminated because one taillight appeared more illuminated than the other as Plaintiff was driving forward. *See* Aff. at ¶ 2 (ECF No. 24-1). The dashcam video also shows that one rear taillight was more illuminated than the other. *See* Ex. 2 (ECF No. 24-2). Plaintiff contends that his taillights were working properly, but he does not dispute Defendant Nutt's observation that one taillight nevertheless appeared more illuminated than the other. *See* (ECF No. 44). On this record, therefore, it was reasonable for Defendant Nutt to initiate a traffic stop to investigate the alleged equipment violation. Even if Defendant Nutt was mistaken and—as Plaintiff contends—there was nothing wrong with the vehicle's rear taillights, Defendant Nutt's decision to initiate a traffic stop was objectively reasonable because from his perspective it appeared as though the vehicle's backup light was illuminated as the vehicle was going forward, in violation of Arkansas law. *See United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) ("Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop.").[6]

Nor is the Court persuaded that the traffic stop was unconstitutional because Plaintiff claims it was motivated by race. As a threshold matter, Plaintiff asserts no facts suggesting that Defendant Nutt was aware of his race when he initiated the traffic stop. *See* (ECF No. 44). While

---

[6] Notably, moreover, Plaintiff admits he was "traveling extremely rapidly" to distance himself from Defendant Nutt. Resp. at 2 (ECF No. 11). Exceeding the speed limit or traveling at a speed "greater than is reasonable and prudent under the conditions" establish independent violations of Arkansas traffic laws. *See* Ark. Code Ann. § 27-51-201. While Defendant Nutt does not argue that he had probable cause to stop Plaintiff for speeding or traveling at a speed greater than reasonable, it appears that Plaintiff concedes that he could have done so.

Plaintiff contends that Defendant Nutt first observed him when he was traveling on Highway 270, he asserts no facts establishing that Defendant Nutt could see who was driving, or identify the race of the driver, given the lighting and time of day (nighttime). *Id.*    In any event, "the subjective intent of an officer cannot vitiate otherwise objectively reasonable conduct." *United States v. White*, 928 F.3d 734, 740 (8th Cir. 2019) (citing *Florida v. Jardines*, 569 U.S. 1, 10 (2013) ("[A] stop or search *that is objectively reasonable* is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason.").  For the reasons described above, the undisputed facts in the summary judgment record establish that it was objectively reasonable for Defendant Nutt to initiate a traffic stop to investigate Plaintiff's vehicle for an equipment violation—namely, a malfunctioning rear taillight.  Defendant Nutt's stop of Plaintiff's vehicle therefore did not violate Plaintiff's Fourth Amendment rights.[7]

## B.    The Expansion of the Stop and Initial Search of the Motor Vehicle

The initial basis of the traffic stop was to investigate a seemingly malfunctioning rear taillight.  It is undisputed that the traffic stop transformed into a search for contraband.  The question, then, is whether this expansion of the stop violated Plaintiff's constitutional rights.  Upon review of the summary judgment record, the answer to this question is no.

After conducting a constitutionally permissible traffic stop, the police officer "may [] conduct certain routine tasks related to the traffic violation, including 'running a computerized check of the vehicle's registration and insurance; running a similar check of the occupants' identification documents and criminal histories; preparing the traffic citation or warning; and asking the occupants about their destination, route, and purpose." *United States v. Cox*, 992 F.3d

---

[7] To the extent that Plaintiff contends that the traffic stop violated his right to equal protection of the laws under the Fourteenth Amendment, the Court discusses this claim below.

706, 710 (8th Cir. 2021) (quoting *United States v. Murillo-Salgado*, 854 F.3d 407, 414-15 (8th Cir. 2017)).  Further, "[a]n officer may expand the scope of a traffic stop beyond the initial reason for the stop and prolong the detention if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the stop is afoot."  *United States v. Gonzalez*, 133 F.4th 819, 823 (8th Cir. 2025) (quoting *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008)).  "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience."  *United States v. Shafer*, 608 F.3d 1056, 1062 (8th Cir. 2010) (citation and quotation marks omitted).

In this case, it is undisputed that immediately after the initial stop, Defendant Nutt approached the passenger side of the vehicle and told Plaintiff the reason for the stop (the malfunctioning taillight).  The dashcam clearly shows, moreover, that Defendant Nutt asked for Plaintiff's driver's license and when he could not (or would not) produce it, Defendant Nutt directed him to write his name on a piece of paper.[8]  During this conversation, Defendant Nutt was shining a flashlight into front passenger compartment and saw a baggie in plain view in the center console underneath the radio containing what he believed in his training and experience to be 3.5-5 grams of methamphetamine.[9]  *See* Pol. Rep. at 5 (ECF No. 24-1)).  He also saw Plaintiff try to

---

[8] While Plaintiff contends that Defendant Nutt did not ask him for his driver's license, this assertion is clearly controverted by the dashcam video.  Accordingly, the Court need not (and does not) adopt Plaintiff's version of events.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[9] The parties disagree on the nature of the substance that was in Plaintiff's car—Plaintiff contends that the substance was crushed up vitamin pills, *i.e.*, not contraband; Defendant Nutt, by contrast, says there was both a baggie of suspected methamphetamine *and* a pill bottle containing vitamins in the car.  For the purposes of summary judgment, however, the true nature of the substance Defendant Nutt observed in Plaintiff's car is not material.  Plaintiff does not assert any facts

conceal the baggie with his hands. *Id.* Considering the totality of the circumstances, therefore, the Court has no hesitation in concluding that Defendant Nutt had reasonable suspicion to expand the traffic stop beyond the initial purpose of the stop—*i.e.* an equipment violation—and direct Plaintiff to step out of the motor vehicle.

To be sure, Defendant Nutt not only directed Plaintiff to step out of his vehicle, he also placed Plaintiff in handcuffs, searched Plaintiff's person, and then searched the car's front passenger compartment without a warrant. As a preliminary matter, Defendant Nutt did not transform Plaintiff's detention into an unlawful arrest by placing him in handcuffs. "[A]n officer's right to conduct an investigatory stop inherently includes the right to use some degree of physical force or threat to effect the stop." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances." *Id.* (quoting *Muehler v. Mena*, 544 U.S. 93, 103 (1989) (Kennedy, J., concurring)). Accordingly, "officers may use handcuffs as a reasonable precaution to protect the officers' safety and maintain the status quo during [an investigative] stop." *Id.* (citing *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006)).

In this case, it is undisputed that Defendant Nutt was alone when he stopped Plaintiff's vehicle. Further, it was dark, and Defendant Nutt asked Plaintiff to exit the car after observing Plaintiff try to conceal a bag containing suspected contraband. Considering these circumstances, it was objectively reasonable for Defendant Nutt to place Plaintiff in handcuffs for Defendant

---

challenging Defendant Nutt's statement saying he *believed* the substance was contraband. The Court, therefore, considers this statement undisputed. *See* Fed. R. Civ. P. 56(e)(2).

Nutt's own safety and to "freeze the scene" to prevent the destruction of evidence.[10]  Similarly, under these same circumstances, Defendant Nutt was justified in conducting a pat-down search of Plaintiff's person after placing him in handcuffs.  *See United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011) ("Officers may conduct a protective pat-down search for weapons during a valid stop—whether a traffic stop or an investigative *Terry* stop or a consensual stop—when they have objectively reasonable suspicion that a person with whom they are dealing 'might be armed and presently dangerous and criminal activity might be afoot.'").[11]

Turning now to Defendant Nutt's initial search of Plaintiff's car, while warrantless searches are *per se* unreasonable under the Fourth Amendment, the so-called "automobile exception" to the warrant requirement "allows law enforcement to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity."  *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (quoting *United States v. Davis*, 569 F.3d 813, 817 (8th Cir. 2009)).  "Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* (quoting *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007)).  Here, again, the Court has no trouble concluding that Defendant Nutt had probable cause to search the vehicle for drugs after observing a baggie of what he believed to be methamphetamine in plain view and Plaintiff trying to conceal that baggie.  Accordingly, contrary to Plaintiff's contention, Defendant Nutt did not need Plaintiff's consent to lawfully search his car.  *See United States v. Mitchell*, Case No. 22-CR-3616, 2023 WL 7295132, at *1 (8th

---

[10] With respect to this latter point, it appears that Defendant Nutt's efforts were in vain as the dashcam shows Plaintiff tossing a small baggie into the grass next to the highway while in handcuffs.  *See* Ex. 2 at 14:40-14:50.

[11] Notably, moreover, Plaintiff does *not* claim that it was constitutionally unreasonable for Defendant Nutt to conduct a pat down search of his person after being placed in handcuffs.  *See* Compl. (ECF No. 1).

Cir. Nov. 6, 2023) (declining to consider whether officers had valid consent to search the car because they had probable cause to search and thus the search was lawful under the automobile exception to the warrant requirement). Rather, Defendant Nutt had probable cause to search Plaintiff's vehicle and thus the search was lawful pursuant to the automobile exception to the warrant requirement.

## C.    Defendant Nutt's Search of Plaintiff's Person

After locating what he believed to be methamphetamine on the front driver's seat, Defendant Nutt tells Plaintiff he is under arrest and that he will be placing him in the back of the squad car. Ex. 2 at 19:30 (ECF No. 24-2). When he leads Plaintiff in the direction of the back of his squad car, he moves out of the view of the dashcam video. *Id.* Plaintiff claims that at this time, Defendant Nutt conducted a constitutionally unreasonable search of his person by reaching inside his underwear and touching his buttocks, penis, and testicles. (ECF No. 1). Plaintiff describes this search as "sexual assault." *Id.* Defendant Nutt contends that he did no such thing. *See* (ECF No. 24-1).

As preliminary matter, while it is undisputed that Defendant Nutt searched Plaintiff after placing him in handcuffs (and Plaintiff does not challenge the reasonableness of this search), Defendant Nutt neither specifically admits nor challenges Plaintiff's assertion that he was searched again off-camera. *See* (ECF No. 24). Accordingly, for the purposes of summary judgment, the Court deems it undisputed that he was subject to a second search off-camera. *See* Fed. R. Civ. P. 56(e).

It is also undisputed that immediately before Defendant Nutt conducted this second search, he told Plaintiff that he was under arrest. *See* Ex. 2 at 19:30-19:32 (ECF No. 24-2). "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement

of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (2018).  During such a search, the police may search "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence."  *Chimel v. California*, 395 U.S. 752, 763 (1969).  The first question then, is whether Plaintiff's arrest was lawful.  The Court finds that it was.

### 1.    Plaintiff's Arrest Was Lawful

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  "Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999).  "Probable cause . . . is not a high bar:  It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Bell*, 979 F.3d at 603 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

In this case, the summary judgment record shows that Defendant Nutt had probable cause to believe that Plaintiff possessed methamphetamine and tampered with evidence, both felonies, in violation of Arkansas state law. *See* Ark. Code Ann. § 5-64-419 (making it a crime to possess any amount of methamphetamine); *id.* § 5-53-111(b)(1) (it is a felony to tamper with physical evidence if the person "impairs or obstructs the prosecution or defense of a felony").  Defendant Nutt observed Plaintiff try to conceal a baggie containing what he believed to be 3.5-5 grams of methamphetamine; Defendant searched the vehicle, finding a pill bottle containing pills and, separately, a crystalline substance strewn on the driver's side and center console; Plaintiff claimed that he "ate the baggie" and that the substance on the driver's side and center console was "crushed up pills;" Defendant Nutt observed that the pills consisted of "compressed powder" whereas the

substance on the seat was crystalline; given Defendant Nutt's training and experience, he reasoned that the crystalline substance was methamphetamine. Defendant Nutt, therefore, considered whether the crystalline substance he observed was crushed up pills from the pill bottle,[12] and rejected that conclusion, determining that the crystalline substance was contraband in light of his training and experience. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."). Considering these circumstances, Defendant Nutt had probable cause to arrest Plaintiff and thus his search incident to arrest was lawful.

**2.    The Scope of the Search Incident to Arrest Was Lawful**

The next question, then, is whether the scope and manner of Plaintiff's search incident to arrest was lawful. The Fourth Amendment prohibits *unreasonable* searches. *See* U.S. Const. amend. IV. Determining the reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). To this end, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *United States v. Williams*, 477 F.3d 974, 975 (8th Cir. 2007) (citing *Bell*, 441 U.S. at 559).

Here, according to Plaintiff, after Defendant Nutt placed him under arrest, he moved him away from the view of the dashcam and then sexually assaulted him by reaching into his pants and

---

[12] Indeed, the dashcam video shows Defendant Nutt taking the pills out of the pill bottle and examining them more closely, *see* Ex. 2 at 10:30—13:30 (ECF No. 24-2).

touching his buttocks, penis, and testicles.  *See* (ECF No. 1).  Defendant Nutt denies it.  *See* Aff. ¶ 4 (ECF No. 24-1).  This fact dispute also does not preclude summary judgment.

In *United States v. Williams*, 477 F.3d 974 (8th Cir. 2007), the Eighth Circuit rejected the argument that intimate contact during an otherwise lawful search was *per se* unreasonable.  *Id.* at 976.  Rather, the Eighth Circuit concluded that "a reach-in search of a clothed suspect [that] does not display a suspect's genitals to onlookers . . . may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." *Id.*  "Evidence of touching, prodding, or the use of physical force are important considerations in weighing the level of insult to personal privacy visited upon the victim of a search." *Robinson v. Hawkins*, 937 F.3d 1128, 1137 (8th Cir. 2019) (quoting *United States v. Oyekan*, 786 F.2d 832, 838 (8th Cir. 1986)) (cleaned up).  "Accordingly, searches involving 'penetration or public exposure of genitals' are considered more intrusive than those not involving such means." *Id.* (citing *Williams*, 477 F.3d at 976).

In this case, the undisputed facts in the summary judgment record show that Defendant Nutt thought that Plaintiff concealed the baggie of methamphetamine in his buttocks.  The audio from the dashcam, for example, reveals Defendant Nutt repeatedly accusing Plaintiff of putting the baggie in his buttocks; Defendant Nutt, at one point, also claims that he could hear the sound of a plastic baggie in Plaintiff's shorts.  *See* Ex. 2 at 19:30-21:00 (ECF No. 24-2).  Defendant Nutt, moreover, initially observed a small baggie containing what he believed to be methamphetamine in Plaintiff's vehicle and then later saw the contents of that baggie strewn about the front seat when

he conducted a search of the car, leading, naturally, to the question of what happened to the baggie.[13]

Further, the record shows that it was dark, the search was conducted on the side of the highway, no one else was present, the search did not involve Plaintiff removing his pants (to the contrary, it is undisputed that Defendant Nutt told him *not* to remove his pants), and the search did not involve Defendant Nutt making vulgar or profane comments. While Defendant Nutt disputes that he touched Plaintiff at all, Plaintiff claims that Defendant Nutt inserted his hand into his underwear and touched his buttocks, penis, and testicles. *See* Compl. at 3-4 (ECF No. 1). Plaintiff does *not* claim that the touching involved any squeezing, penetration, or otherwise any manipulation of his buttocks or testicles. *Id.* On this record, therefore, even if (as Plaintiff claims) Defendant Nutt reached inside Plaintiff's underwear, touching his genitals, the record shows that the touching was merely incidental to determining whether Plaintiff concealed a baggie of drugs in his buttocks and not unreasonable under the Fourth Amendment.

Notably, moreover, even if the manner in which Defendant Nutt conducted the search incident to arrest violated Plaintiff's constitutional rights, Defendant Nutt is nevertheless entitled to qualified immunity so long as his conduct "does not violate clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hassan v. City of Minneapolis, Minn.*, 489 F.3d 914, 919 (8th Cir. 2007). In this case, a reasonable officer in Defendant Nutt's position could have believed that the search here was less intrusive than the search in *Williams*. In *Williams*, law enforcement took the suspect to the police precinct's rear parking lot, which was "surrounded by the back of the precinct building, a brick wall, and a chain

---

[13] Defendant Nutt plainly did not observe Plaintiff toss a baggie into the grassy area next to the highway. *See* Ex. 2 at 14:00-15:00 (ECF No. 24-2).

link fence topped with barbed wire." *Williams*, 477 F.3d at 975.  After removing the suspect from the squad car, an officer, "who was wearing a latex glove, opened [the suspect's] pants, reached inside [his] underwear, and retrieved a large amount of crack and powder cocaine near [his] genitals." *Id.*  As noted above, in that case, the Eighth Circuit concluded that search in the parking lot caused no "unreasonable invasion of personal rights" in violation of the Fourth Amendment. *Id.* at 977 (quoting *Bell*, 411 U.S. at 559).

Similarly, here, even if Defendant Nutt searched Plaintiff as he described it, the search was not in view of the public, did not involve an officer of the opposite sex, did not require Plaintiff to pull his pants down, did not involve Defendant Nutt groping or otherwise manipulating his genitals or making any rude or profane comments towards him, nor did it involve any use of force.  These facts, moreover, are distinguishable from cases where the court found that the manner and scope of a search was constitutionally unreasonable.  *Cf. id.* at 976 (citing *Smook v. Minnehaha Cty.*, 457 F.3d 806, 812 (8th Cir. 2006) ("It has been observed that strip searches requiring a person to disrobe completely have a uniquely invasive and upsetting nature."); *Glover v. Paul*, 78 F.4th 1019, 1022-23 (8th Cir. 2023) (affirming denial of qualified immunity where plaintiff asserts that officer subjected him to a strip search without a legitimate penological justification, "grasped his naked penis, squeezed it hard, and gestured"); *Farkarlun v. Hanning*, 855 F.Supp.2d 906, 923 (D. Minn. 2012) ("Searching of a suspect by an officer of the opposite sex that involves intimate touching has also been held unreasonable.") (citing *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011)); *Meeks v. City of Minneapolis*, 822 F.Supp.2d 919, 923 (D. Minn. 2011) (concluding that police officers violated plaintiff's constitutional rights when they pulled down his pants while making no effort to protect his privacy).  Put otherwise, Plaintiff identifies no controlling case or a robust consensus of cases of persuasive authority establishing that it is

27

constitutionally unreasonable for an officer to reach into an arrestee's underwear where, as here, there is an objectively reasonable basis to conclude that the arrestee concealed contraband in his underwear, the search involved touching his genitals but no manipulation or use of force, no one else was present, and the search did not involve the arrestee completely (or partially) disrobing. *See Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020).  Accordingly, even if Defendant Nutt's search of Plaintiff's person incident to his arrest was unreasonable in manner and scope (a question this Court answers in the negative), Plaintiff's right to be free from such a search was not clearly established at that time and Defendant Nutt is nevertheless entitled to qualified immunity with respect to this claim.

**D.    The Fifth and Fourteenth Amendments**

Plaintiff also asserts that Defendant Nutt violated his Fifth Amendment rights.  *See* Compl. at 7 (ECF No. 1).

**1.    Defendant Nutt is entitled to summary judgment on Plaintiff's Fifth Amendment claims.**

As a threshold matter, it is entirely unclear how the Fifth Amendment is implicated in this case.  Plaintiff claims that Defendant Nutt "violated [his] constitutional rights under the right of probable cause and [his] rights of due process."  Compl. at 9.  As described in detail above, the Court analyzes Plaintiff's contention that he was arrested without probable cause under the Fourth Amendment. *See White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) ("A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause.") (internal citation and quotation omitted).  And that analysis compels the Court to conclude that Defendant Nutt had probable cause to arrest Plaintiff: Defendant Nutt observed a baggie of what he suspected to be methamphetamine in the car; upon searching that car, Defendant Nutt saw the substance strewn

28

across the driver's seat and center console, and this substance later field tested positive for methamphetamine.

While Plaintiff asserts that Defendant Nutt violated his due process rights, "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions." *See Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'")). It is undisputed that no federal actor was involved in the stop and search of Plaintiff's vehicle or his person. Accordingly, Plaintiff's Fifth Amendment Due Process claim fails as a matter of law.[14]

### 2. Defendant Nutt is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

Recognizing that pro se complaints are to be liberally construed, the Court views Plaintiff's due process claim (as does Defendant Nutt) as being brought under the Fourteenth Amendment and concludes that Defendant Nutt is entitled to summary judgment as to this claim, as well.

To establish a substantive due process violation, Plaintiff "must demonstrate that a fundamental right was violated and that [the police officer's] conduct shocks the conscience." *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005).

---

[14] Plaintiff's response to Defendant Nutt's Motion for Summary Judgment claims (for the first time) that Defendant Nutt failed to inform him of his *Miranda* rights. Resp. at 5 (ECF No. 44). To the extent that this claim is properly before the Court, the United States Supreme Court recently held that an alleged *Miranda* violation does not provide a basis for a § 1983 claim. *See Vega v. Tekoh*, 597 U.S. 134, 141 (2022). Thus, this claim fails as a matter of law.

It has been clearly established in the Eighth Circuit that the "commission of a sexual assault by a government official acting under color of law constitutes a violation of due process that shocks the conscience." *Johnson v. Phillips*, 644 F.3d 232, 239 (8th Cir. 2011) (citing *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998)). In *Johnson*, the plaintiff alleged that the officer "pushed her up against the hood of her car, pulled her shorts and underwear to the side, took pictures of her genitals with his cellular phone, and penetrated her vagina with his finger." *Id.* In that case, the Eighth Circuit concluded that the allegations "constitute an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective." *Id.* (quoting *Rogers*, 152 F.3d at 797). In *Rogers*, after a traffic stop, the police officer followed the driver home and raped her. *Rogers*, 152 F.3d at 793. In concluding that the police officer's conduct "shocks the conscience," the Eighth Circuit concluded that the "[the plaintiff's] rape was an intentional act that produced constitutional injury and that was an 'arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.'" *Id.* at 797 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).

In this case, Plaintiff's claims, taken as true, represent a dramatic departure from *Johnson* and *Rogers*. Here, Plaintiff asserts that Defendant Nutt touched his genitalia when he reached into his underwear after claiming that he heard the sound of a plastic baggie in his shorts—a plastic baggie that Defendant Nutt believed contained methamphetamine. Plaintiff does not allege that Defendant Nutt squeezed, penetrated or otherwise manipulated his genitalia. *See* (ECF No. 1). On this record, therefore, it is not clearly established that Defendant Nutt's conduct was conscience shocking and thus Defendant Nutt is entitled to summary judgment on Plaintiff's substantive due process claim.

Finally, Plaintiff asserts in his response to Defendant Nutt's Motion for Summary Judgment that Defendant Nutt discriminated against him. *See* Resp. at 5 (ECF No. 44). The Court construes this claim as asserting an equal protection claim under the Fourteenth Amendment. To the extent this claim is properly before the Court, it does not survive summary judgment.

"The Constitution prohibits selective enforcement of the law based on considerations such as race." *Parada v. Anoka Cty.*, 332 F.Supp.3d 1229, 1244 (D. Minn. 2018) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). "A selective-enforcement claim does not require proof that the plaintiff was arrested without probable cause or reasonable suspicion to believe that the plaintiff committed a criminal offense." *Id.* (citing *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003)). "Rather, the plaintiff must prove that the officer exercised his or her discretion to enforce the laws on account of the plaintiff's race, nationality, or other characteristics." *Id.* (citing *Johnson*, 326 F.3d at 1000). To this end, "the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.* (quoting *Johnson*, 326 F.3d at 1000). This is where Plaintiff's selective-enforcement claim begins and ends. Plaintiff asserts no facts—disputed or otherwise—establishing that Defendant Nutt did *not* initiate traffic stops on similarly situated white motorists—*i.e.*, motorists who were "traveling rapidly" with one rear taillight more illuminated than the other and expired tabs. Plaintiff's Equal Protection claim, therefore, fails as a matter of law.

## CONCLUSION

In sum and for all the reasons described above, **IT IS HEREBY ORDERED THAT** Defendant Nutt's Motion for Summary Judgment, (ECF No. 23), is **GRANTED**; Plaintiff's Motion for Judgment, (ECF No. 61), Motion for Order, (ECF No. 64), and Motion for Court to

Order Arbitration, (ECF No. 65), are therefore **DENIED as MOOT.**  Accordingly, this case is **DISMISSED WITH PREJUDICE**. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 56 and 58.

      **IT IS SO ORDERED** this 31st day of December 2025.

*/s/ Spencer G. Singleton*
HON. SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE